UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

v.                                                                                                                                                       Case No. 06-14319
                                                                                                                                                 Hon. Sean F. Cox

ROCKET ENTERPRISES, INC.,

    Defendant.
_____/

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for summary judgment. Both parties have briefed the issues and a hearing was held November 15, 2007. For the following reasons, the Court **DENIES** Defendant's Motion for summary judgment.

### I.    BACKGROUND

This action arises out of the alleged wrongful termination of Mary Bischoff, by Defendant, Rocket Enterprises, Inc. The Plaintiff in this action is the Equal Employment Opportunity Commission ("EEOC").

Defendant is a small company owned and managed by Charles Bowers. Charles Bowers' brother, Jerald Bowers, runs the service department. Defendant installs, sells and maintains flags. Bischoff was employed by Defendant as a flag sewer.

In 2006, Defendant opted to start doing flag repairs in-house, rather than sending the work out. Defendant hired Janice Cleghorn and Bischoff in March 2006. Allegedly, based on

1

cost considerations, Charles Bowers decided to terminate one of the flag sewers. Jerald Bowers recommended that Bischoff be terminated allegedly based on several factors: (1) Cleghorn was the first flag sewer hired; (2) Cleghorn was the better employee; and (3) based on the trouble caused by Bischoff. Bischoff was terminated on May 5, 2006 and has not been replaced. Defendant has since gone back to out-sourcing flag repair.

During her employment, Bischoff contends she was subjected to sexually explicit conversations from a radio talk show listened to by a co-worker, Al. Bischoff also alleges that Al told sexually explicit jokes. On the morning of May 5, 2006, Bischoff claims she went to speak to Jerald Bowers about her concerns. While speaking with Jerald, Bischoff used the phrase "sexual harassment." It is Bischoff's contention that from that moment, Jerald's demeanor changed. She says that approximately ten minutes later Jerald returned to her work area and asked her to follow him to a conference room. In the conference room, Bischoff and Jerald were joined by the office manager, Lisa Adams. Jerald informed Bischoff she was being terminated because business was slow. Bischoff expressed her belief that she was being fired for complaining about sexual harassment. Charles Bowers came out of his office and according to Bischoff, told her she was an antagonizer and she could call an attorney.

On September 29, 2006, the Equal Employment Opportunity Commission filed a Complaint on behalf of Bischoff. The Complaint stated a claim for both sexual harassment and retaliation. However, Plaintiff indicates in its Response to Defendant's Motion that it only intends to proceed on the claim for retaliation. [Response, p.5, n.1]. Defendant filed the instant Motion on August 13, 2007.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### III. ANALYSIS

In this case, Plaintiff alleges that Bischoff was terminated because she reported sexual harassment. "In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Company, Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). Here, the parties proceed under the *McDonnell Douglas* framework.

To establish a prima facie case of unlawful retaliation under Title VII, the plaintiff must establish that: (1) she engaged in an activity that Title VII protects; (2) defendant knew that she engaged in this protected activity; (3) the defendant subsequently took an employment action adverse to the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists. *Id.* "The burden of establishing a prima facie case in a

3

retaliation action is not onerous, but one easily met." *Id.* If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse action. *Id.* If the defendant meets this burden, the plaintiff must then establish that the proffered reason was a mere pretext for discrimination by establishing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Id.* "If the plaintiff demonstrates that the defendant's proffered, non-discriminatory reason is a pretext, then the fact finder *may* infer unlawful retaliation." *Id.* (emphasis original). "Throughout the entire *McDonnell Douglas* framework, the plaintiff bears the burden of persuasion." *Id.*

### A. Prima Facie Case

Defendant argues that Plaintiff fails to establish a prima facie case because Plaintiff cannot establish a causal connection between Bischoff's complaint of sexual harassment and her termination. Defendant contends that temporal proximity alone is insufficient.

The law is murky in the Sixth Circuit with respect to the impact of temporal proximity alone on satisfying the fourth prong of the prima facie case. In general, temporal proximity alone is insufficient to establish a causal connection. The Sixth Circuit has stated "[a]lthough temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 737 (6th Cir. 2006). One of the cases relied on in *Randolph* is *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000). In *Nguyen*, the court cited with approval its holding in an unpublished case, that "temporal proximity in the absence of other evidence of causation is not sufficient to raise an

4

inference of a causal link." *Id.* at 566 (citing *Parnell v. West*, 1997 WL 271751, *2-3 (6th Cir. 1997)). Yet, the *Nguyen* court went on to note that in *Parnell* it also stated that "cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Id.* at 566-567. Finally, the *Nguyen* court conceded "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference." *Id.* at 567.

The Sixth Circuit came closer to identifying what "circumstances" it was referring to in *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). In *DiCarlo*, the court held "[w]ith regard to ... establishment of a 'causal connection' between the protected activity and the adverse employment action ... that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." The *DiCarlo* court further noted "this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *Id.* More recently, in *Denhof v. City of Grand Rapids*, 494 F.3d 534, 544 n.9 (6th Cir. 2007), the Sixth Circuit held "the temporal proximity between a plaintiff's protected activity and the adverse employment action can satisfy the causal connection requirement."

For purposes of this case, it is not necessary to parse out exactly what circumstances, or amount of time, are sufficient without more to establish a causal connection. This is clearly one of the "distinct cases" described in *DiCarlo*, because the adverse action was allegedly within ten minutes of the protected activity. This is "acutely near" enough that Plaintiff establishes a causal connection.

### B. Legitimate Nondiscriminatory Reason

Because Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for terminating Bischoff's employment. Defendant satisfies its burden by asserting that it terminated Bischoff for economic reasons. Defendant alleges that it was too costly to retain two flag sewers, and Defendant did not replace Bischoff after her termination.

### C. Pretext

Plaintiff has the burden of establishing that Defendant's proffered reason is pretext by establishing: (1) it has no basis in fact; (2) it did not actually motivate the adverse action; or (3) it was insufficient to motivate the adverse action. *Abbott*, 348 F.3d at 542.

Defendant argues that Plaintiff's only evidence of pretext is temporal proximity between Bischoff's complaint to Jerald Bowers, and her termination. Defendant contends this is insufficient to withstand summary judgment. Plaintiff argues that in this case, the temporal proximity is sufficient. Further, Plaintiff argues that in addition to the temporal proximity, there is also evidence that Bischoff was not terminated for economic reasons. Plaintiff directs the Court to Bischoff's testimony where she claims Jerald Bowers' entire demeanor changed after she mentioned sexual harassment. [Response, Exhibit L, p.23]. Further, Bischoff testified that she was rushed out as soon as she was informed she was being terminated. According to her testimony, both Charles and Jerald Bowers immediately shouted for someone to bring a box to pack Bischoff's things. [Response, Exhibit L, pp. 27, 33]. Bischoff contends that upon being fired she began to suffer a panic attack and an ambulance was called. While she was on the stretcher, she claims Charles Bowers asked her for her keys so he could get her car off the

6

company lot. [Response, Exhibit L, p.33]. Further, although Defendants allege Bischoff was terminated because business was slow, she testified that Jerald Bowers planned to hire her daughters to work during the summer. [Response, Exhibit L, pp.100-101].[1]

Plaintiff's argument that the temporal proximity alone is sufficient to establish pretext is unpersuasive. To support its argument, Plaintiff directs the court to *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555 (6th Cir. 2004).[2] In *Singfield*, the plaintiff worked for a housing commission. He was suspended after an altercation with his supervisor. Along with the suspension, the plaintiff was required to complete anger management counseling, and could not return to work until released by the counselor. When the counselor was ready to release the plaintiff, the defendant informed the counselor of additional allegations of violence against plaintiff it learned from co-workers. The counselor referred the plaintiff to a psychologist who did not release the plaintiff for work. The plaintiff filed a discrimination claim with the EEOC. Three months after filing the discrimination charge, the plaintiff's employment was terminated. The plaintiff alleged his termination was in retaliation for filing the

---

[1] In the brief, Plaintiff also argues that Charles Bowers told Bischoff she was "an antagonizer" and that she could call an attorney. [Response, p.8]. However, Plaintiff failed to cite to any evidence, and this exchange was not included in the deposition excerpt provided. Thus, the Court did not consider this remark in the analysis.

[2] Plaintiff also directs the Court to *DiCarlo, supra*, where the court states that in certain cases temporal proximity alone is deemed indirect evidence "such as to permit an inference of retaliation to arise." *DiCarlo*, 358 F.3d at 421. However, the court clearly was not holding that temporal proximity alone was sufficient to establish pretext. The court was dealing only with the causal connection prong of the prima facie case, the cases cited by the *DiCarlo* court, in this circuit and others, confirms the point the court was making with that statement. Further, the court stated "[b]ecause the district court did not address issues of whether a non-discriminatory reason existed to justify DiCarlo's termination, and whether DiCarlo could prove that the given reason was a pretext for retaliation, we need not engage in that analysis here." *Id.* at 422. Thus, even if the statement was meant as Plaintiff argues, it would clearly be dicta.

discrimination charge. The district court granted summary judgment on the retaliation claim, but the Sixth Circuit reversed. The court found the plaintiff had established a prima facie case, and thus the court should exercise caution before granting summary judgment. The court held "[i]n light of Singfield's argument that the temporal proximity of the discrimination charge and his termination gives rise to an inference of retaliation, we conclude that he has satisfied the sufficiency standard at the summary judgment phase." *Id.* at 565.

In contrast, the Sixth Circuit explicitly held that temporal proximity, standing alone, is not enough to withstand summary judgment in *Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309 (6th Cir. 2001). In *Skrjanc*, the plaintiff was terminated approximately one month after informing his employer that he needed to take a leave of absence under the Family and Medical Leave Act ("FMLA"). With respect to the prima facie case, the court noted that "the proximity in time between Skrjanc's request for leave and his discharge constitutes indirect evidence of a causal connection between his exercise of a right under the FMLA and the adverse employment decision." *Skrjanc*, 272 F.3d at 314. The only admissible evidence the plaintiff had on the issue of pretext, was the temporal proximity. The *Skrjanc* court held "such temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Id.* at 317 (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1397-1398 (10th Cir. 1997) and *White v. Simpson Industries, Inc.*, 2001 WL 45240 (6th Cir. 2001)). See also *Holley v. Giles County*, 165 Fed.Appx. 447, 451-452 (6th Cir. 2006)("even a strong temporal connection, without more, is insufficient to withstand summary judgment"); *Heady v. United States Enrichment Corporation*, 146 Fed.Appx. 766, 770-771 (6th Cir. 2005)("While temporal proximity is sufficient to meet the low burden required to establish a

8

prima facie case of retaliation in violation of the FMLA, it is not alone sufficient to establish that an employer's legitimate, non-discriminatory reason for discharge was a pretext."); and *Thompson v. Ameritech Advertising Services*, 40 Fed.Appx. 90, 93 (6th Cir. 2002)("temporal proximity, standing alone, is not sufficient evidence of pretext").

Although there is an apparent conflict between the holdings of *Singfield* and *Skrjanc*, this court is bound to follow *Skrjanc*. When a later filed decision of the Sixth Circuit conflicts with a prior published decision, the district court is bound to follow the earlier case. *Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001). As the *Darrah* court noted "a panel of this Court cannot overrule the decision of another panel...[t]he prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Id.* at 309. *Skrjanc* is a published opinion that was decided prior to *Singfield*. Thus, to the extent that *Singfield* is in conflict with *Skrjanc*, this court applies the holding of *Skrjanc*. Accordingly, Plaintiff must present evidence of pretext in addition to temporal proximity, in order to withstand summary judgment.

In addition to the temporal proximity, Plaintiff submits Bischoff's testimony regarding Jerald Bowers' demeanor change after she mentioned sexual harassment; the way she was rushed out; and that despite any cost concerns, her daughters were supposed to work during the summer. This evidence, coupled with the extremely short temporal proximity between her complaint of sexual harassment and her termination are sufficient to establish pretext.

The Sixth Circuit addressed evidence of a similar nature in *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006). In *Asmo*, the plaintiff alleged her employment was terminated in violation of

the Pregnancy Discrimination Act. 42 U.S.C. § 2000e(k). Approximately two months after informing her employers that she was pregnant with twins, the plaintiff was terminated. After finding the plaintiff established a prima facie case, based in part on the temporal proximity, the court turned to the issue of pretext. The court found that the most significant evidence showing pretext was plaintiff's supervisor's conduct after the plaintiff announced her pregnancy. "The news was met with congratulations from all her colleagues except Santoro, who did not comment and then 'simply moved on to the next business topic in the conference call.'" *Asmo*, 471 F.3d at 594. "Santoro's initial silence is suspect...[p]regnancies are usually met with congratulatory words, even in professional settings." *Id.* In addition, the court noted that the plaintiff's supervisor did not mention her pregnancy again until her termination. Ultimately, the court found "Santoro's silence could be interpreted as discriminatory animus." *Id.* at 595. The court did recognize that there are other possible explanations for Santoro's silence, but "where we examine evidence in the light most favorable to the non-moving party, we believe that [plaintiff's] argument is sufficient to call into question Santoro's motives." *Id.*

Similarly, in this case, although there are other explanations for Defendant's conduct, it is suspect that as soon as Bischoff mentioned sexual harassment, Jerald Bowers' demeanor changed. The expected response would be to investigate the situation, or talk to the accused co-worker. Instead, Defendant abruptly terminated Bischoff's employment and made extreme attempts to get her off the premises, including asking her for her keys while she was being taken to an ambulance on a stretcher. This, coupled with the ten minutes between Bischoff's complaint and her termination, is enough to establish pretext.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for summary judgment.

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated: November 19, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on November 19, 2007, by electronic and/or ordinary mail.**

**S/Jennifer Hernandez**
**Case Manager**