UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

v.    Case No. 06-14319
    Hon. Sean F. Cox

ROCKET ENTERPRISES, INC.,

    Defendant.

_____

## OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR NEW TRIAL

This matter is before the Court on Plaintiff's Motion for New Trial. Plaintiff argues the Court erred by giving Jury Instructions 25A and 27 because the instructions give the definition of a sexually hostile environment. Plaintiff objected to these two instructions at trial, but agreed to the remaining jury instructions. Plaintiff also challenges the verdict form in this Motion, arguing that it does not address the ultimate issue. However, Plaintiff did not object to the verdict form at trial. For the following reasons, the Court **DENIES** Plaintiff's Motion for New Trial.

### I. BACKGROUND

This action arises out of the alleged wrongful termination of Mary Bischoff, following her alleged report of sexual harassment. The underlying facts are sufficiently set forth in the parties' Joint Final Pre-trial Order [Doc. 27], and the parties' Trial Briefs [Docs. 29 and 40].

Trial commenced in this action on January 29, 2008. During the course of the trial, the

1

parties agreed on all jury instructions except instructions 25A and 27. The issue was whether the legal definition of a sexually hostile environment should be given. On February 5, 2008, this Court issued a ruling on the disputed jury instructions and gave the jury an instruction defining what constitutes a sexually hostile environment. The instruction was accompanied with the admonition that Plaintiff was not required to prove that a hostile environment actually existed, only that Bischoff's report was reasonable under that standard. Plaintiff objected to the instruction.

The jury returned a verdict in favor of Defendant. On February 22, 2008, Plaintiff filed the instant Motion for New Trial, arguing that the Court erred by giving jury instructions 25A and 27 and because the verdict form did not address the "ultimate issue." Defendant filed a Response on March 11, 2008.

## II. STANDARD OF REVIEW

Following a jury trial, FRCP 59(a) provides that the court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "The Supreme Court has noted that 'the authority of trial judges to grant new trials' pursuant to Rule 59(a) 'is large.'" *Bell v. Johnson*, 404 F.3d 997, 1002 (6th Cir. 2005)(citing *Gasperini v. Center for the Humanities, Inc.*, 518 U.S. 415, 433 (1996)). "The district court, in considering a motion for a new trial, must weigh the evidence, compare the opposing proofs, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence." *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir. 1992). The court should deny the motion "if the verdict is one which could reasonably have been reached." *Id.* "The verdict is not unreasonable simply because different inferences and conclusions could have been drawn or

because other results are more reasonable." *Id.*

With respect to allegedly erroneous jury instructions, "[o]bvious and prejudicial error in instructing the jury constitutes grounds for a new trial even if the party assigning the instructions as error failed to object before the trial court." *Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244, 248 (6th Cir. 1991). "The critical inquiry with regard to jury instructions is 'whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried.'" *Id.* (citation omitted).

### III. ANALYSIS

The jury instructions at issue stated:

> Statutorily protected activity includes, among other things, opposing sexual harassment in the workplace, and can range from filing formal charges to voicing informal complaints to superiors.
>
> To constitute protected activity, Mary Bischoff must have had a reasonable, good faith belief that the conduct she complained of was unlawful, i.e., for the purposes of this case, constituted a sexually-hostile work environment.

[Jury Instruction 25A, "Protected Activity"].

> A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive enough to alter the conditions of the victim's employment and create an abusive working environment.
>
> The determination of whether a work environment is sexually hostile includes consideration of the frequency of discriminatory conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with an employee's performance. Simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.
>
> For the purposes of this case, Plaintiff does not need to prove that a sexually hostile work environment actually existed, only that Mary Bischoff reasonably and in good faith believed that it did.

3

[Jury Instruction 27 "Definition of a Sexually Hostile Work Environment"].

Plaintiff contends these instructions were erroneous because they require that "an employee who has made a sexual harassment complaint engages in protected activity only if the employee reasonably believes that the conduct she has complained of constitutes legally actionable sexual harassment." [Motion, ¶2]. Plaintiff further asserts that the allegedly erroneous jury instructions caused the jury to reach a "seriously erroneous result." [Motion, ¶4]. According to Plaintiff, "the jury instructions are fundamentally flawed because they improperly framed the issue of whether Mary Bischoff engaged in protected activity in terms of whether she was complaining about conduct that had actually ripened into legally actionable conduct." [Motion, pp.13-14].

As an initial matter, the Court was careful to point out that Plaintiff was not required to prove that a sexually hostile environment actually existed. The jury was read this instruction and given individual written copies including this admonition.

### A. What Claim did Plaintiff Assert?

First, it is important to clarify what claim went to trial. The claim that proceeded to trial was Plaintiff's claim that Defendant violated Title VII by "terminating Bischoff in retaliation for her complaint that she had been subjected to a hostile work environment because of sexual harassment." [Complaint, ¶8]. In this Motion, Plaintiff appears to argue that Bischoff's complaint alleged "sexual harassment" independent from a claim for a sexually hostile environment. Such a claim does not exist. There are two types of "sexual harassment" prohibited by Title VII, *quid pro quo* harassment and harassment which creates a sexually hostile environment. See *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751 (1998)("Cases based

on threats which are carried out are referred to often as *quid pro quo* cases, as distinct from bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment."); *Blankenship v. Parke Care Centers, Inc*., 123 F.3d 868, 872 (6th Cir. 1997)(rev'd on other grounds)("Courts have recognized two types of workplace sexual harassment as constituting discrimination on the basis of sex: *quid pro quo* harassment, in which a supervisor requests sexual favors in exchange for job benefits, and 'hostile work environment' harassment, in which a pervasive atmosphere of sexual harassment creates an objectively hostile work environment."); and *Kauffman v. Allied Signal, Inc*., 970 F.2d 178, 182 (6th Cir. 1992)("Case law recognizes two types of sexual harassment: 1) harassment that creates an offensive or hostile environment; and 2) quid pro quo harassment, in which a supervisor demands sexual favors as a condition of job benefits.).

Plaintiff directs the Court to 29 C.F.R. § 1604.11,[1] in an apparent effort to establish a distinction between a "sexually hostile work environment" claim and an undefined "sexual harassment" claim. This regulation identifies three situations in which sexual harassment may be found, the second one being when the proscribed conduct is submitted to or rejected, and that submission or rejection is the basis for an employment decision. This definition would include *quid pro quo* cases where a sexual advance or demand for a sexual favor is requested in

---

[1] The language the Plaintiff appears to rely on is contained in 29 C.F.R. § 1604.11(a), in pertinent part: "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individuals' employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

exchange for a promotion or other favorable treatment. Presumably, Plaintiff's argument is that 29 C.F.R. § 1604.11(a)(2) creates a sexual harassment claim where an employee's rejection of any of the proscribed conduct is used as the basis for termination, independent of whether the conduct creates a hostile environment. However, Plaintiff does not identify any authority to support this interpretation, which would create a third form of sexual harassment conduct prohibited by Title VII. This interpretation is contrary to the case law cited above, which recognizes two types of claims - one for cases involving request or threats for sexual favors, etc., i.e. *quid pro quo* cases; and one for cases involving sexual remarks that are severe and pervasive enough to constitute a sexually hostile environment.

Notably, Plaintiff did not offer this regulation at trial and did not present the Court with any legal definition of sexual harassment it would have preferred the Court give over the definition of a sexually hostile environment.

"As an administrative interpretation of [Title VII] by the enforcing agency, [EEOC] Guidelines, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Savings Bank, v. Vinson*, 477 U.S. 57, 65 (1986)(citations omitted). Assuming that Plaintiff's presumed interpretation of § 1604.11(a)(2) is correct, the Court does not find it persuasive in light of the relevant case law defining the types of claims cognizable under Title VII.

Consequently, the conduct complained of had to fall into either the category of *quid pro quo* or hostile environment in order to be actionable, otherwise, it would not constitute "sexual harassment." The conduct complained of by Bischoff was meant to allege a sexually hostile

environment as opposed to a *quid pro quo* situation.

B.      **What is Protected Activity?**

Title VII protects two types of retaliation actions, participation and opposition. 42 U.S.C. § 2000e-3(a). Plaintiff's claim for retaliation for reporting a sexually hostile environment is brought under the opposition clause of Title VII. A claim falls under the participation clause of Title VII when the protected activity involves making a charge, filing a complaint, testifying, assisting, or participating in an investigation, proceeding or hearing under Title VII. *Booker v. Brown & Wiliamson Tobacco Co., Inc*., 879 F.2d 1304, 1312 (6th Cir. 1989)(citation omitted). A claim is brought under the opposition clause when it involves opposing a violation of Title VII. *Id.* "The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings." *Id.* Plaintiff admits this claim is an opposition claim, but argues that "an employee is protected under § 704(a) when she *opposes* conduct that could amount to unlawful discrimination under Title VII." [Motion, p.13](emphasis original). Further, Plaintiff asserts it was error for the Court to instruct the jury that "in order to prevail, Bischoff must have believed that she was complaining about a legally actionable sexually hostile work environment."[2] [Motion, p.13].

Plaintiff is correct that the employee does not "bear the entire risk that [the conduct complained of] is in fact lawful," and the jury instructions reflected as much. *Booker*, 879 F.2d at 1312. However, Plaintiff seems to go further and assert that any complaint made by an

---

[2]Again, it must be noted that the Court did not instruct the jury that Bischoff's complaints had to be about conduct that actually created a sexually hostile environment, as Plaintiff suggests here. The jury instructions required only that Bischoff reasonably believed that it did.

7

employee to a supervisor is protected activity. This is incorrect. It is well-settled that "the opposition clause does not protect all 'opposition' activity." *Id.* "Courts are required 'to balance the purpose of the Act to protect persons engaging reasonably in activities opposing discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Id.* As the Supreme Court noted, Title VII does not prohibit all workplace harassment, even harassment between men and women is not automatically a violation of Title VII "merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 80 (1998).

In *Clark County School District v. Breeden*, 532 U.S. 268 (2001), the Supreme Court found that a plaintiff asserting a claim of retaliation did not engage in protected activity because a reasonable person could not believe the conduct she complained of violated Title VII. In *Clark*, the plaintiff was a school district employee who during the course of reviewing applications witnessed a co-worker read aloud a sexually explicit comment from one of the applications. The co-worker, and the plaintiff's supervisor, made a nondescript remark and chuckled about the comment from the application. The plaintiff complained of the incident and was allegedly terminated as a result. The plaintiff filed a retaliation claim under Title VII. The Court began by noting "sexual harassment is actionable under Title VII only if it is 'so severe or pervasive' as to 'alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 270. The Court also reiterated that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 271. The Court held that "[n]o reasonable person could have believed that the single incident...violated Title VII's standard." *Id.*

8

The holding in *Clark* makes clear that in order for a retaliation claim to be actionable under Title VII, the person complaining must have reasonably believed the conduct complained of violated Title VII. In the event that reported conduct is not serious enough that a reasonable person could believe it violated Title VII, a claim for retaliation will not lie. *Clark*, 532 U.S. at 271. Plaintiff appears to misunderstand this proposition. Plaintiff asserts in its Motion, as support of this Court's error, that "pursuant to Jury Instructions Nos. 25A and 27, opposing sexual harassment under an employer's sexual harassment policy would not constitute 'protected activity.'" [Motion, p.8]. However, depending on the circumstances and the scope of the employer's sexual harassment policy, it is true that complaining of "sexual harassment" prohibited by an employer's policy may not rise to the level of "protected activity" for purposes of Title VII. In the example given by Plaintiff, Plaintiff notes that an employer may broadly define sexual harassment. Where an employer's policy broadly defines sexual harassment to prohibit conduct that could not reasonably be considered sexual harassment under Title VII, complaining of that conduct is not protected activity. Of course, if the employer has made a policy proscribing particular conduct, there likely would be consequences from the employer for engaging in the prohibited action. But, this is not relevant for purposes of this case, the focus for deciding whether particular conduct is "sexual harassment" under Title VII does not depend on whether it is offensive, or prohibited by an employer's private policy, but whether it is prohibited by Title VII.

This is consistent with the Court's definition of what is required to assert a sexually hostile environment claim. In *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993), the Court held that Title VII is violated when the workplace is permeated with discriminatory intimidation,

9

ridicule, and insult, sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The Court noted that the reason for this standard is to forge a middle ground between "making actionable any conduct that is merely offensive" and requiring actual psychological injury in order to sustain a claim. *Id.* The Court stated that a "mere utterance of an epithet which engenders offensive feelings in a [sic] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Id.* "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive working environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." *Id.* The purpose of this requirement is to protect employers from malicious accusations and frivolous claims by requiring the complaining employee to demonstrate a good faith, reasonable belief that the challenged practice violates Title VII. *Parker v. Baltimore And Ohio Railroad Company*, 652 F.2d 1012, 1020 (D.C. Cir. 1981). Without this objective component, an employee would be free to continually complain about benign comments that only offend their subjective sensitivities and an employer would be prevented from reproaching the employee for the nuisance complaints for fear of litigation.

### C. Is Plaintiff Entitled to a New Trial?

To establish a prima facie case of unlawful retaliation under Title VII, the plaintiff must establish that: (1) she engaged in an activity that Title VII protects; (2) defendant knew that she engaged in this protected activity; (3) the defendant subsequently took an employment action adverse to the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists. *Abbott v. Crown Motor Company, Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). As Plaintiff asserts, "a violation of Title VII's retaliation provision can be found

whether or not the challenged practice ultimately is found to be unlawful." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579-580 (6th Cir. 2000). However, the opposition voiced by the plaintiff must "be based on 'a reasonable and good faith belief that the opposed practices were unlawful.'" *Id.* at 579 (citation omitted).

### 1. Were the jury instructions erroneous?

The Jury Instructions given in this case, including Instructions 25A and 27, were an accurate description of the law. In order for the jury to determine whether Bischoff was reasonable in believing that the conduct she complained of violated Title VII, the jury had to be told what it is that violates Title VII. To do otherwise would be to allow the jury to decide for itself what constitutes sexual harassment under Title VII. Accordingly, the jury was instructed on what conduct may constitute a sexually hostile environment - and was also told that Plaintiff did not have to prove that such an environment actually existed, only that Bischoff had to be reasonable in believing that the conduct she complained of met this standard. Moreover, it was proper to limit the potential "unlawful conduct" for the jury's consideration to only sexually hostile environment because that was the only unlawful conduct possible based on Plaintiff's allegations and the evidence presented. Plaintiff is not entitled to a new trial on the basis of erroneous jury instructions.

### 2. Was the jury's verdict erroneous?

Because the jury was required to follow the allegedly erroneous jury instructions, Plaintiff claims the verdict was "seriously erroneous." [Motion, p.10]. Plaintiff does not allege any other basis for attacking the verdict. The sufficiency of the evidence is not in question.

The jury's verdict was not erroneous because the jury instructions were an accurate

description of the law. Accordingly, Plaintiff is not entitled to a new trial on the basis that the verdict was "seriously erroneous."

### 3. Was the verdict form erroneous?

The verdict form contained the following question on the issue of liability:

> Do you find from a preponderance of the evidence that Mary Bischoff engaged in protected activity known to Defendant and that the protected activity was the determining factor in her termination from employment?

[Doc. 60]. Plaintiff contends the verdict form is erroneous because it allowed the jury to avoid answering the ultimate question "whether Defendant terminated Bischoff in retaliation for her sexual harassment complaint." [Motion, p.10]. According to Plaintiff, "the ultimate question of whether the Defendant engaged in 'discrimination *vel non*' went unanswered." [Motion, p.12].[3]

Plaintiff's argument is unavailing. There is no authority that a jury verdict form tracking the prima facie elements is erroneous. Plaintiff misunderstands the concept of *"vel non."* The purpose of *"vel non"* is that "once there has been a trial on the merits, an appellate court can not revisit whether the plaintiff established a prima facie case." *Kovacevich v. Kent State University*, 224 F.3d 806, 822 (6th Cir. 2000). In *Imwalle v. Reliance Medical Products, Inc.*, --- F.3d ----, 2008 WL 340450, *9 (6th Cir. 2008)(citing *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)), the court held "a party framing its argument on appeal in prima facie terms, after a jury trial on the merits, has 'unnecessarily evaded the ultimate question of discrimination *vel non*.'" The point of this is to prevent the "rigid, mechanized, or ritualistic" use of the *McDonnell-Douglas* burden shifting framework in discrimination cases. *Aikens*, 460 U.S.

---

[3]Notably, Plaintiff did not object to the verdict form and submitted the language at issue in its Proposed Jury Instructions filed February 3, 2008. [Doc. 55].

12

at 715.

However, a jury is not prevented from ruling on the prima facie elements of a retaliation claim. In *Kovacevich*, the court held it was not error for the district court to submit to the jury the question of whether the plaintiff established a prima facie case. *Kovacevich*, 224 F.3d at 824. The court noted that "the elements of a prima facie case can indeed go before a jury" but, "in reviewing a trial that proceeds beyond the prima facie stage, neither the district court nor appellate court should refocus on the question of whether a plaintiff established her prima facie case." *Id.* Also, in *Brown v. Packaging Corporation of America*, 338 F.3d 586, 593 (6th Cir. 2003), the court held that it is not reversible error for the trial court to instruct the jury on the *McDonnell-Douglas* analysis, which includes the determination of whether the plaintiff established a prima facie case.

In this case, whether the evidence supports a finding that Plaintiff was retaliated against in violation of Title VII is not before the Court. Additionally, whether the evidence presented by Plaintiff established a prima facie case is not before the Court. Plaintiff filed the instant Motion for New Trial arguing only that the jury instructions and verdict form were not accurate interpretations of the law, and thus the resulting verdict was "seriously erroneous." The Court is not asked to rule on whether the evidence supported a verdict for either party. Thus, the cases cited by Plaintiff regarding discrimination *vel non* are inapplicable to this Motion because this Motion does not request review of the verdict on the merits. In addition, the verdict form submitted to the jury is not erroneous merely because it includes the prima facie elements of retaliation.

Violation of 42 U.S.C. § 2000e-3(a) for retaliation explicitly requires that an employee be

13

discriminated against for opposing "any practice made an unlawful employment practice." The jury instructions as a whole and the verdict form accurately explain the relevant law to enable the jury to determine whether there has been a violation. Therefore, Plaintiff is not entitled to a new trial.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for a New Trial.

**IT IS SO ORDERED.**

        **S/Sean F. Cox**
        **Sean F. Cox**
        **United States District Judge**

**Dated: March 18, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on March 18, 2008, by electronic and/or ordinary mail.**

        **S/Jennifer Hernandez**
        **Case Manager**